**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEIRDRE GLASCOE,** | ✦ | |
| **Plaintiff** | ✦ | |
| | ✦ | |
| **v.** | ✦ | **Civil Case 8:10-cv-00710-AW** |
| **PRINCE GEORGE'S COUNTY**, *et al.*, | ✦ | |
| **Defendants.** | ✦ | |

✦   ✦   ✦   ✦   ✦   ✦   ✦   ✦

**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS'
MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    FACTS .................................................................................................. 4

II.   STANDARD OF REVIEW ...................................................................... 7

III.  ARGUMENT ......................................................................................... 8

  A.   Plaintiff's Claims Must Be Dismissed Against Defendants In Their Individual Capacity Because They Are Immune From Personal Liability. .................... 8

    1.   Defendant Judges and Court Clerks are Absolutely Immune From Personal Liability....................................................................................... 8

    2.   Defendant Glenn F. Ivey, State's Attorney for Prince George's County District Court, Is Immune From Personal Liability. ................................................. 12

    3.   Defendant Governor Martin O'Malley Is Immune From Personal Liability. ............................................................................................... 14

1

B.     Plaintiff's Claims Against The State Defendants In Their Official Capacity And Claims Against State Agencies Must Be Dismissed Because They Are Barred By Sovereign Immunity. ................................................................................................... 15

   1.     Sovereign Immunity Bars Plaintiff's Claims Against the Defendant State Agencies.   ............................................................................................................ 16

   2.     Sovereign Immunity Bars Plaintiff's Claims Against the Individual State Defendants in Their Official Capacity For Money Damages.................................... 18

   3.     Sovereign Immunity Bars Plaintiff's Claims Against the Individual State Defendants in Their Official Capacity For Equitable Relief.................................... 19

   4.     Maryland Has Not Waived Its Sovereign Immunity.............................. 28

   5.     Congress Has Not Abrogated Maryland's Sovereign Immunity. .......... 29

C.     Plaintiff's Claims Must Be Dismissed Because She Fails To State A Claim Upon Which Relief Can Be Granted. ........................................................................... 29

   1.     Plaintiff Lacks Standing To Bring A Claim Under RICO. .................... 30

   2.     Plaintiff Fails To State A Claim Under §1983. ...................................... 34

   3.     Plaintiff Fails To State A Claim Under 42 U.S.C. § 1981. .................... 40

   4.     Plaintiff Fails To State A Claim Under § 1985 Because She Does Not Allege Sufficient Facts To Support A Finding Of An Agreement, An Overt Act Done In Furtherance Of The Conspiracy, Or Racial Animus. .................................. 41

   5.     Plaintiff Fails To State A Claim Under § 1986 Because She Does Not Allege Any Defendant Failed To Prevent A Wrong Under § 1985. ......................... 47

IV.     CONCLUSION ...................................................................................... 49

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DEIRDRE GLASCOE,** | ✦ | |
| **Plaintiff** | ✦ | |
| | ✦ | |
| **v.** | ✦ | **Civil Case 8:10-cv-00710-AW** |
| **PRINCE GEORGE'S COUNTY**, *et al.*, | ✦ | |
| **Defendants.** | ✦ | |

✦   ✦   ✦   ✦   ✦   ✦   ✦   ✦

## MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS

Maryland Governor Martin O'Malley, Maryland Attorney General Douglas F. Gansler, Chief Judge Robert M. Bell, Prince George's County Circuit Court Judge Thomas P. Smith, Prince George's County Circuit Court Judge C. Phillip Nichols, Jr., District Court of Maryland for Prince George's County Judge Thomas J. Love, Prince George's County Circuit Court Judge William D. Missouri, Prince George's County Circuit Court Clerk Peggy Magee, District Court of Maryland for Prince George's County Clerk Mary Abrams, Prince George's County State's Attorney Glenn F. Ivey, District Court of Maryland for Prince George's County, Prince George's County Circuit Court, the Maryland Court of Special Appeals, the Maryland Attorney Grievance

Commission, and the Maryland Commission on Judicial Disabilities, some of the Defendants ("the State Defendants"), submit this Motion to Dismiss in response to the complaint filed by Plaintiff.  The Complaint alleges that the State Defendants violated the Racketeer Influenced and Corrupt Organizations Act, as well as 42 U.S.C. §§1981, 1983, 1985, and 1986.

This complaint stems from Plaintiff's contentious and lengthy battle with the Board of Directors of her condominium.  Her complaint against the Governor, the Attorney General of Maryland, five judges, two clerks, and various state and local agencies is a result of her failed litigation against the Board of Directors and other people and entities connected with the Board.

The individual State Defendants are immune from personal liability for the acts Plaintiff alleges form the basis of her complaint.  Plaintiff's claims against the individual State Defendants in their official capacity, as well as against the state agencies, are barred by sovereign immunity.   In addition, even if Plaintiff's claims were not barred by immunity, Plaintiff fails to state a claim upon which relief can be granted.

## I.    FACTS

In July, 2002, Plaintiff purchased a condominium unit at the Seville, located in Prince George's County, Maryland.  Complaint at ¶ 45.  Sometime shortly thereafter, Plaintiff was elected Treasurer on the Board of Directors of the Seville.  *See* Plaintiff's Exhibit A.  As Treasurer, Plaintiff alleges to have uncovered Seville's violations of the Maryland Condominium Act.  Complaint at ¶ 48.  Plaintiff states she reported these

alleged violations to the Consumer Protection Division of the Maryland Office of the Attorney General in August and November of 2002.

Plaintiff alleges that Poretsky Management, the management company for the Seville, retaliated against her for filing a complaint with the Office of the Attorney General.   Specifically, Plaintiff claims that Poretsky Management filed a retaliatory lawsuit against her in the Circuit Court for Prince George's County for defamation and tortuous interference with their contractual relationship with the Seville.  *See* Plaintiff's Exhibit A at 145; Complaint at ¶ 88.  Plaintiff filed a cross complaint against Poretsky Management and was awarded a judgment against the company for $55,000.  Complaint at ¶ 19.  *See also Poretsky v. Glascoe*, CAL 03-11327.  However, in May, 2006, the Court of Special Appeals of Maryland reversed the judgment against Poretsky Management.

In addition, Plaintiff was charged with assault and battery on an employee of the condominium.  Complaint at ¶ 89.  Plaintiff claims that these criminal charges were fabricated and also a form of retaliation by Poretsky Management.  *Id.*

In 2003, Plaintiff attempted to tape record a closed meeting of the Board.  *See* Plaintiff's Exhibit A at page 90-93; Complaint at ¶¶ 124-138.  Several people present at the meeting objected to being recorded.  *Id.*  Plaintiff states that at a hearing before the

Prince George's County Circuit Court she was prohibited from entering the tape into evidence.[1]  Complaint at ¶ 140.

Plaintiff's disagreements with the Board of Directors of the Seville ultimately lead to Plaintiff filing an 18 count complaint against 23 defendants in November, 2005.  *See* Plaintiff's Exhibit A, page 115.  The case, *Glascoe v. Seville Condominium*, CAL 05-23373, came before Judge Nichols in the Prince George's County Circuit Court.

Plaintiff alleges that in the course of this litigation, Judge Nichols treated her unfairly.  For instance, Plaintiff claims Judge Nichols refused to allow Plaintiff to have a trial consultant, allowed opposing counsel to call surprise witnesses and interrupt Plaintiff's presentation of her case, denied her request to submit electronic evidence, and granted the opposing party's protective order.  *See* Complaint at ¶¶ 145, 146, 148, and 157.  In general, Plaintiff is upset because she believes "every motion Plaintiff filed was denied even though the law was on Plaintiff's side.  Every motion [Plaintiff's] opponents filed was granted even when the law was not on the opponents [sic] side."  *Id.* at 100.  On December 29, 2009, judgments were entered as to all defendants and against Plaintiff.

On March 23, 2010, Plaintiff filed the instant complaint.  Plaintiff alleges that the State Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18

---

[1] Plaintiff does not indicate in which trial this occurred.

U.S.C. §§1961-1968, (hereinafter "RICO"), and 42 U.S.C. §§1981, 1983, 1985, and 1986.

## II.     STANDARD OF REVIEW

Ordinarily, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. At 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Where, as here, however, Plaintiff's civil RICO and §§ 1981, 1983, 1985, and 1986 claims sound in fraud, those claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Field v. GMAC LLC*, 660 F.Supp.2d 679, 686 (E.D.Va.2008) (explaining that "[w]here RICO claims are based on predicate acts of fraud, the heightened pleading standard set forth in Rule 9(b) of the Federal Rule of Civil Procedure applies"). Under Rule 9(b), Plaintiff must state predicate acts of fraud with particularity, specifying "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and

what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999).

## III.   ARGUMENT

Defendants are immune from personal liability for the acts Plaintiff alleges form the basis of her complaint.  Plaintiff's claims against Defendants in their official capacity are barred by sovereign immunity.  In addition, Plaintiff fails to state claims upon which relief can be granted.

### A.   Plaintiff's Claims Must Be Dismissed Against Defendants In Their Individual Capacity Because They Are Immune From Personal Liability.

Plaintiff brings this complaint against all the State Defendants in their official and individual capacity except Defendant Attorney General Gansler.  Attorney General Gansler has only been named in his official capacity.  Well established common-law immunities bar Plaintiff's claims against all the State Defendants in their personal capacity.  For a discussion on why Plaintiff's claims against the State Defendants in their official capacity must fail, see section B.

### 1.   Defendant Judges and Court Clerks are Absolutely Immune From Personal Liability.

Plaintiff's claims against the Defendant judges must be dismissed because the claims are barred by absolute judicial immunity[2].  Absolute judicial immunity for judicial

_____

[2] Plaintiffs' claims against the Circuit Court for Prince George's County and the

8

acts applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872).

In determining if a judge performed a judicial act, the court considers "whether [the act] is a function normally performed by a judge" and "whether [the parties] dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). All allegations that Plaintiff makes against the defendant judges are judicial acts. Judges normally determine whether to admit evidence, grant or deny motions, reverse lower court decisions, manage the discovery timeline, and modify scheduling orders. Plaintiff dealt with the judges in their judicial capacity, appearing before the judge as a party, when the judges took each of these acts.

Furthermore, the judge must have general judicial authority to take the judicial act. As long as the judge does not have a "clear absence of all jurisdiction over the subject matter," judicial immunity will bar claims against a judicial act. *Fisher*, 13 Wall. at 351. Plaintiff does not allege the defendant judges in this case lacked clear jurisdiction over the subject matter. Certainly the circuit and district court judges had general jurisdiction

---

District Court of Maryland for Prince George's County are barred by absolute judicial immunity to the same extent the claims against the judges are barred. Plaintiff's claims stem from the actions of the judges of those courts in hearing her civil and criminal cases. These claims are therefore subject to the judges' judicial immunity. Claims against these state agencies are also barred by sovereign immunity. See Section B(1), *supra*.

to hear her tort claims, and the Court of Special Appeals of Maryland had jurisdiction to hear her appeal.

It is well established that Section 1983 does not abolish common law judicial immunity. The Supreme Court stated that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for judicial acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967). Therefore, the Supreme Court held that "Congress would have specifically so provided had it wished to abolish the doctrine" through Section 1983. *Id*. Consequently, the Court held judges cannot be held liable under Section 1983 for damages based on their judicial acts. *Id.*

Plaintiff brings additional claims under RICO and 42 U.S.C. §§1981, 1985, and 1986. Although absolute judicial immunity has not been examined as closely under these statutes, the defendant judges still enjoy absolute judicial immunity so long as the acts that form the basis of the complaint were judicial in nature and performed within the general scope of their jurisdiction. *See Berg v. Cwiklinski*, 416 F.2d 929, 931 (7th Cir. 1969) (dismissing claim brought, in part, under §1985 because judges "are immune from liability for acts done in performance of their judicial function"); *Burke v. Miller*, 580 F.2d 108, 109 (4th Cir. 1978) (stating that *Imbler v. Pachtman*, 424 U.S. 409 (1976), reaffirms "that §1983 (and, we believe, §1985 as well) is to be read in harmony with general principles and tort immunities rather than in derogation of them"); *Stambler v. Dillon*, 302 F.Supp. 1250, 1254-55 (D.C.N.Y. 1969) ("There is no doubt that [the

defendant judge] is immune from any liability under the Civil Rights Act. . .where he acts within the course and scope of his judicial duties."); *Knight v. Episcopal Church of United States*, 2010 WL 2930979 (D.S.C. Mar. 24, 2010) (holding that defendant judge was absolutely immune against lawsuit brought under RICO for performing normal judicial functions and where facts did not indicate the acts were taken in clear absence of all jurisdiction).

Like with §1983, the language of RICO and §§1981, 1985, and 1986 do not show a clear legislative intent to abolish common law judicial immunity. *See Chappell v. Robbins*, 73 F.3d 918, 923-25 (9th Cir. 1996) ("In passing RICO, Congress did not evince a clear legislative intent to displace common-law immunities."). Consequently, the same conclusion can be drawn that Congress, taking into consideration the strong policy reasons for absolute judicial immunity and the fact that judges have been "cloaked with absolute civil immunity for centuries," did not intend to abolish judicial immunity when it enacted these statutes. *Imbler v. Pachtman*, 424 U.S. at 429.

The judicial clerks named in the complaint, Ms. Magee and Ms. Abrams, are immune from personal liability from these claims to the same extent as the judges. "The general rule is that [judicial clerks], when performing tasks that are integral to the judicial process, enjoy the same immunity that is applicable to the judges. Particularly in more recent cases, the courts have applied the same kind of functional analysis that has been applied to judges." *Gill v. Ripley*, 352 Md. 754, 771 (1999). *See also Briscoe*, 460 U.S. at 335 ("[T]he common law provided absolute immunity from subsequent damages

liability for all persons- governmental or otherwise- who were integral parts of the judicial process."); *Sindram v. Suda*, 986 F.2d 1459, 1460 (C.A.D.C. 1993) (holding that "clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process" because of the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly would vent their wrath on clerks, court reporters, and other judicial adjuncts.'") (*quoting Dellenbach v. Letsinger,* 889 F.2d 755, 763 (7th Cir.1989)).

### 2.    Defendant Glenn F. Ivey, State's Attorney for Prince George's County District Court, Is Immune From Personal Liability.

Defendant Ivey, State's Attorney for Prince George's County, is also absolutely immune from civil liability for the acts that form the basis of Plaintiff's complaint. Common law prosecutorial immunity "is based upon the same considerations that underlie the common-law immunities of judges . . . acting within the scope of their duties." *Imbler*, 424 U.S. at 423.  Without absolute prosecutorial immunity, the threat of suits would undermine the prosecutor's performance, the public trust of the prosecutor's office would suffer, and the prosecutor's time and attention would be diverted from enforcing the criminal law. *Id.* at 425.

Consequently, prosecutors enjoy absolute prosecutorial immunity for acts "intimately associated with the judicial phase of the criminal process." *Id.* at 430.  This does not mean that prosecutorial immunity is limited to the courtroom; "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and

12

which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Because of the strong policy reasons behind absolute prosecutorial immunity, the Supreme Court held that prosecutorial immunity applies in full force to suits brought under §1983. *Id.* at 427 ("We conclude that the considerations outlined above dictate the same absolute immunity under §1983 that the prosecutor enjoys at common law.") In determining to extend absolute prosecutorial immunity to §1983 claims, the Supreme Court stated that prosecutors, "acting under serious constraints of time and even information, . . . inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials."

Clearly the public policy behind absolute prosecutorial immunity is only served when a prosecutor is absolutely immune from all potential lawsuits, not just §1983. Defending actions under RICO or §§1981, 1985, and 1986 would also undermine the prosecutor's performance, divert attention and resources from criminal prosecutions, and impose unique and intolerable burdens on prosecutors. Therefore, Defendant State's Attorney Ivey is absolutely immune from liability under all of Plaintiff's claims so long as the claims are based upon acts that are intimately associated with the judicial phase of the criminal process.

Plaintiff does not specify which acts Defendant Ivey took that form the basis of her complaint.  However, Plaintiff does state she was criminally charged with assault against an employee of the Seville.  Initiating a prosecution and presenting the state's case in court are acts most intimately associated with the judicial phase of the criminal process.  *See Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under §1983.").  Therefore, Plaintiff's claims against Defendant State's Attorney Ivey in his personal capacity must be dismissed.

### 3.    Defendant Governor Martin O'Malley Is Immune From Personal Liability.

Qualified immunity bars Plaintiff's claims against Governor O'Malley in his personal capacity and therefore they must be dismissed.  "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Although qualified immunity is not as broad as absolute immunity, it protects "all but the plainly incompetent or those who knowingly violate the law." *Crooke*, 412 F.3d at 553 (*quoting Malley v. Briggs,* 475 U.S. 335, 341(1986)).

In order to overcome qualified immunity, a plaintiff must first show that a constitutional right was violated by the government official.  If a constitutional right was

violated, the Plaintiff must then show that a reasonable person would have known that his conduct violated this right.  *See generally Crooke*, 412 F.3d at 558; *Campbell v. Galloway*, 483 F.3d 258, 266 (4th Cir. 2007) ("The threshold inquiry is whether the facts alleged, taken in the light most favorable to [the plaintiff], demonstrate the violation of a constitutional right. If so, then we must determine whether the contours of the right were clearly established such that a reasonable official would understand that his actions violated that right.").

Plaintiff does not allege that Governor O'Malley took part in any of her criminal or civil trials.  In fact, Plaintiff's complaint does not allege that Governor O'Malley himself took *any* act, much less one that deprived her of a constitutional right.  Therefore, Plaintiff cannot overcome the defense of qualified immunity and the complaint against Governor O'Malley in his personal capacity must be dismissed.

**B.    Plaintiff's Claims Against The State Defendants In Their Official Capacity And Claims Against State Agencies Must Be Dismissed Because They Are Barred By Sovereign Immunity.**

Plaintiff brings her claims against all individual the State Defendants in their official capacity. In addition, these claims are brought against five state agencies: the Circuit Court for Prince George's County, the District Court for Prince George's County, the Court of Special Appeals of Maryland, the Maryland Attorney Grievance Commission, and the Maryland Commission on Judicial Disabilities.  Plaintiff requests both damages and equitable relief.

The Eleventh Amendment confers the sovereign status of the states and shields them from suits brought by individuals. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (stating that under the Eleventh Amendment "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State"); U.S. Const. amend. XI. Therefore, the State is not susceptible to suit in federal court without a valid waiver or abrogation of its sovereign immunity. *See Board of Trs. of Univ. of Ala.,* 531 U.S. 356, 363 (2001).

Although the Eleventh Amendment only refers to claims against the State, it is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Id.* Both Plaintiff's claims against the State Defendants in their official capacity, as well as her claims against the state agencies, are really claims against the State which are barred by the Eleventh Amendment. Because Maryland has not waived its sovereign immunity, nor has Maryland's sovereign immunity been abrogated by any of the statutes under which Plaintiff brings her claim, Plaintiff's complaint must be dismissed.

**1.     Sovereign Immunity Bars Plaintiff's Claims Against the Defendant State Agencies.**

Plaintiff's claims against the Circuit Court for Prince George's County, the District Court for Prince George's County, the Court of Special Appeals of Maryland, the Maryland Attorney Grievance Commission, and the Maryland Commission on Judicial Disabilities are properly considered claims against the State and are barred by sovereign

16

immunity.  The District Court for Prince George's County, the Circuit Court for Prince George's County, and the Court of Special Appeals of Maryland are all courts of Maryland which exercise the sovereign immunity of the State in performing its judicial functions.  *See* Md. Const. art. IV §§ 14A, 19, 41A; Md. Code Ann. Cts. & Jud. Proc. §§ 1-401, 1-501, 1-601.  The Attorney Grievance Commission is empowered to exercise a portion of the authority of the Maryland Court of Appeals, the highest court in Maryland, to aid the Court of Appeals in licensing attorneys and regulating which attorneys may appear before the State's courts.  *See* Md. Rule 16-711.  The Commission on Judicial Disabilities is also empowered to exercise a portion of the authority of the Court of Appeals; it investigates complaints against Maryland judges, conducts hearings concerning such complaints, and makes recommendations for actions to the Court of Appeals.  *See* Md. Rule 16-803.  Therefore, all Defendant entities are properly considered state agencies.

It is well established that not only a State, but also its agencies, are entitled to sovereign immunity under the Eleventh Amendment.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Puerto Rico Aqueduct & Sewer Auth'y v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993) (stating that States and its "arms" are entitled to the immunity conferred by the Eleventh Amendment).  The Eleventh Amendment is a jurisdictional bar to claims against the State, and its agencies,

regardless as to the nature of the relief sought.  See *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Therefore, each of the defendant state agencies is immune from suit and Plaintiff's claims against them must be dismissed.

### 2. Sovereign Immunity Bars Plaintiff's Claims Against the Individual State Defendants in Their Official Capacity For Money Damages.

Plaintiff's claims against the individual State Defendants in their official capacity for damages are barred by Eleventh Amendment sovereign immunity.  When a claim is made against an individual in his or her official capacity for damages, Eleventh Amendment sovereign immunity applies because the state is the real party in interest to the suit.  "When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Edelman*, 415 U.S. at 663 (*quoting Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)).  See also, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (stating that under the Eleventh Amendment "[f]ederal courts may not award retrospective relief, for instance money damages or its equivalent, if the State invokes its immunity"); *Edelman*, 415 U.S. at 663 ("[T]he rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.")

Plaintiff requests a monetary award of treble damages under RICO, damages for violation of her constitutional rights, and damages in the amount of her past and future

economic loss.  Although the State is not named as a defendant, it is the real party at interest and entitled to invoke sovereign immunity.  Therefore, her claims for damages against individual State Defendants in their official capacity are barred by the Eleventh Amendment and must be dismissed.

> **3.     Sovereign Immunity Bars Plaintiff's Claims Against the Individual State Defendants in Their Official Capacity For Equitable Relief.**

Plaintiff's claims for equitable relief against the individual State Defendants in their official capacity are also barred by the Eleventh Amendment because her claims do not fit into the "narrow exception" created by the *Ex Parte Young* doctrine.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 76 (1996).  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized that the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Hawkins*, 540 U.S. at 437.  This doctrine balances the competing interests of vindicating the supreme authority of the United States and maintaining the constitutional sovereignty of the States.  *Pennhurst State School & Hospital*, 465 U.S. at 105.

In order to determine if the *Ex Parte Young* doctrine applies, "a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (*quoting Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)).  Plaintiff fails to

satisfy this inquiry because she cannot show any violations of federal law, the violations she alleges are not ongoing, and the relief she requests is not prospective.

### a)      Plaintiff Fails To Properly Allege Any Violation Of Federal Law.

As an initial matter, Plaintiff fails to allege *any* act by the majority of the State Defendants, much less an act which would violate federal law.  Governor O'Malley, Attorney General Gansler, Chief Judge Bell, Judge Missouri, Judge Smith, Judge Love, Clerk Magee, and Clerk Abrams are never mentioned in the entire complaint as having taken a specific act in violation of federal law.[3]

In addition, many of the violations of law Plaintiff alleges do not involve federal law, but state law.  For instance, Plaintiff alleges that the State Defendants failed to properly discipline attorneys.  Complaint at ¶ 239.  The discipline and regulation of attorneys in Maryland is within the exclusive jurisdiction of the Court of Appeals of Maryland.  *See In re Application of Kimmer*, 392 Md. 251, 269 (2006) ("[I]t has been clear, since 1898, that the Court of Appeals has had exclusive jurisdiction over the regulation of, and admission to, the practice of law.").  Likewise, Plaintiff claims that the Commission for Judicial Disability refused to process her complaint against a judge.

---

[3] Plaintiff does allege that the Consumer Protection Division of the Office of the Attorney General did not investigate her complaint against the Seville, however Attorney General Gansler himself is never motioned.  In any event, such an alleged failure to investigate cannot be the basis of a claim.  *Langworthy v. Dean*, 37 F.Supp.2d 417, 422-23 (D. Md. 1999).

Complaint at ¶ 299.   The discipline and regulation of Maryland judges is governed by Maryland law.   *See* Md. Const. Art. 4, §3A; Md. Rule 16-814.   It is well established that the *Ex Parte Young* doctrine does not apply to violations of state law.   *Pennhurst State School & Hospital*, 465 U.S. at 106 ("[W]hen a plaintiff alleges a state official has violated state law . . .the entire basis for the doctrine of *Young* . . . disappears. . .[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.")

When Plaintiff does allege a violation of federal law, it is clear that no violation has actually occurred.   Plaintiff claims that the State's law against the unauthorized practice of law is unconstitutional because it prohibited her from purchasing the services of paralegals and legal secretaries to help her in responding to opposing party's motions. Complaint at ¶ 152.   Under Md. Code Ann. Bus. Occ. & Prof. §10-601(a), a person may not practice law in Maryland unless admitted to the State's bar.   The practice of law includes "preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court."   §10-101(h)(2)(iii).   Plaintiff believes that this statute is "unconstitutional on its face" because it violates the equal protection clause by permitting attorneys to hire paralegals while prohibiting *pro se* litigants from doing the same.   Even assuming that attorneys were treated differently than *pro se* litigants, this statute would not be facially unconstitutional because *pro se* litigants are not members of a protected class.   *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (stating that statutes not classifying by race, national origin, alienage, or

gender are subject to rational basis review).  Plaintiff has not established that the statute lacks any rational basis.  The statute also does not violate her right to procedural due process because Plaintiff was able to bring her case before the court and received all the process she was due.  Procedural due process does not guarantee a person the right to paralegals in bringing a civil claim.

Plaintiff also alleges that Md. Code Ann. Crim. Proc. §10-105(c)(1) is unconstitutional because it violates the Privileges and Immunities Clause of the Fourteenth Amendment and also the right to petition the government for a redress of grievances under the First Amendment.  Complaint at ¶¶ 184, 186.  Section §10-105(c)(1) states that a "petition for expungement based on an acquittal, a nolle prosequi, or a dismissal may not be filed within 3 years after the disposition, unless the petitioner files with the petition a written general waiver and release of all the petitioner's tort claims arising from the charge."  This clearly does not violate the Privileges and Immunities Clause of the Fourteenth Amendment, because that clause prohibits a State from treating nonresidents unequally to residents of the State.  *See generally Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287 (1998).  Section 10-105(c)(1) applies equally to residents and nonresidents of Maryland who wish to expunge criminal records in the State's courts.  The statute also does not violate the First Amendment because it does not bar any person's access to the court.  If a person wishes to pursue a claim based upon the acquittal, nolle prosequi, or dismissal of his or her case, §10-105(c)(1) only requires that the person not expunge the records before bringing the claim.  This is a

logical requirement based upon the fact that the opposing parties cannot defend against the action without the relevant supporting documents. Once a person expunges his or her records, the records could be physically destroyed. *See* Md. Code Ann. Crim. Proc. §10-101(e)(1) (stating that expungement of a court record or police record means removal from public inspection, including by obliteration). Consequently, it would be impossible to prepare a defense.

Plaintiff also alleges that the State Defendants "gave the Seville, A Condominium [sic], a regime created by the state of Maryland, authority to deprive Glascoe of her property and liberty interests without imposing responsibility on the Seville, A Condominium [sic] as a constitutional actor in violation of § 1983." Complaint at ¶ 200. Plaintiff states that the State Defendants failed "to acknowledge the Seville, A Condominium [sic] as a constitutional actor," and as a "direct and foreseeable consequence" Plaintiff was deprived of her constitutional rights. *Id.* at ¶¶ 208-10. Although Plaintiff alleges that all Defendants are responsible for this violation, clearly only the defendant judges and courts could even remotely be accused of this alleged violation. However, no federal law requires judges to rule a certain way. No federal law states that condominiums are "constitutional actors." To the extent that Plaintiff alleges this failure was a violation of § 1983 itself, her argument also fails. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)); *see also Wofford v. Evans,* 390 F.3d

23

318, 322 n.1 (4th Cir. 2004). "[O]ne cannot go into court and claim a 'violation of §

1983'– for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v.*

*Doe,* 536 U.S. 273, 285 (2002) (quoting *Chapman v. Houston Welfare Rights Org.,* 441

U.S. 600, 617 (1979)).

b)   **Plaintiff Does Not Allege An *Ongoing* Violation Of Federal Law.**

The requirement of an ongoing violation in order to invoke the *Ex Parte Young*

doctrine sets a "minimum threshold for abrogating a state's constitutional immunity. To

have a state sued in federal court without even a contention of an ongoing violation of

federal law would only multiply 'the indignity of subjecting a State to the coercive

process of judicial tribunals at the instance of private parties.'" *Booth v.   State of*

*Maryland*, 112 F.3d 139, 142 (4th Cir. 1997) (*quoting Puerto Rico Aqueduct & Sewer*

*Auth'y,* 506 U.S. at 146).

Even assuming Plaintiff alleges violations of federal law that properly fit within

the *Ex Parte Young* doctrine, none of these violations are, in fact, ongoing.   Plaintiff

concedes in her complaint that the alleged violations have ended.   For instance, Plaintiff

states that from June, 2003, until March, 2010, the State Defendants engaged in a pattern

of racketeering activity.   Complaint ¶ 109.   Since Plaintiff states this activity ended in

March, 2010, the violation has ended.

Other violations Plaintiff alleges were isolated acts taken in connection with her

civil litigation before Judge Nichols in the Circuit Court of Maryland for Prince George's

County.   She alleges that Judge Nichols denied her motion to quash a subpoena for her

24

medical records and denied her request for accommodation under the Americans with Disabilities Act. *Id.* at 117, 143. Plaintiff's case before Judge Nichols has ended. There is no continued ongoing threat by Judge Nichols to admit evidence or deny her request for accommodations.

c) **Plaintiff Does Not Request Prospective Relief Permitted By *Ex Parte Young* Doctrine.**

The *Ex Parte Young* exception to sovereign immunity clearly only applies when the plaintiff requests prospective injunctive or declaratory relief. *See* However, not every claim for injunctive relief will fall under the *Ex Parte Young* doctrine; courts must be careful not to blindly apply the doctrine to every instance where a plaintiff pleads injunctive relief. In such a case, the principals of the Eleventh Amendment would be "sacrificed to elementary mechanics of captions and pleadings." *Idaho*, 521 U.S. at 270. To maintain the "careful" balance between vindicating the supreme authority of the United States and maintaining the sovereignty of the States, "the Supreme Court has strictly limited the application of the *Ex Parte Young* doctrine to circumstances in which injunctive relief is necessary to 'give life to the Supremacy Clause.'" *Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

Plaintiff's requested relief does not fall within the *Ex Parte Young* exception. Clearly, monetary damages requested are not prospective and are barred by the Eleventh Amendment. *See* Section B(2), *supra*. Plaintiff also requests the "striking of all

judgments/costs from any and all Maryland Court records which were entered against Glascoe and Colette, Inc." Complaint at ¶ xviii. Not only is this requested relief retroactive, but this Court does not have the jurisdiction to enter such an order. By seeking reversal of state court orders, Plaintiff attempts to circumvent the state appellate process by filing in federal court. Federal district court does not have appellate jurisdiction over state court decisions. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) ("The jurisdiction possessed by the district courts is strictly original.").

Plaintiff also requests an extensive and complicated overhaul of state policies, laws, and procedures under the guise of "permanent injunctions." Condominiums in Maryland are governed by the Maryland Condominium Act and overseen by the Office of the Secretary of State and the Consumer Protection Division of the Office of the Attorney General. Despite this system of regulation, Plaintiff requests the court issue a permanent injunction that orders the appointment of a "monitor" who will "establish, review, and enforce all polices applicable to the operation and management" of condominiums and "appoint a conservator for any condominium" when certain financial criteria are met.

Plaintiff also requests extensive changes to the Maryland procedures and statutes governing the regulation and discipline of its attorneys. Plaintiff requests an injunction that orders the monitor to "disbar attorneys and implement a 3-strike system against judges." Complaint at ¶¶ iii-vi. Plaintiff also requests an injunction that "establishes an independent Court Officer Behavior Review Committee, composed of three members,

two selected by the Court, one of whom shall be selected by The National Association of Pro se Litigants, Inc." *Id.* at ¶ vii.   However, the Maryland Court of Appeals "has original and complete jurisdiction over attorney disciplinary proceedings" involving members of Maryland Bar. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388 (2002).  Consequently, an order by a federal court drastically changing the regulation and admission of attorneys to the State would be a severe threat to sovereign immunity.

Plaintiff requests an injunction that fundamentally changes other aspects of the State court system as well.  For instance, she requests an injunction that orders the courts to "establish a pro se litigant case management track in which 50% of all hearings. . . must be scheduled for weekend or evening hours to reduce the likelihood of attorneys maliciously causing a pro se litigant to lose time from work."  *Id.* at ¶ xi.  Plaintiff also requests injunctions that change the service of process, the issuance of contempt orders, and the issuance of protective orders.

Plaintiff also requests extensive changes to State criminal procedure laws, as she requests an injunction that "orders the Prince George's County States [sic] Attorney apply a lie detector test to a witness initiating a criminal complaint before prosecution is allowed."

Clearly issuing these types of orders would tip the careful balance between vindicating the supreme law of the United States and protecting State sovereignty.  These orders do not vindicate federal laws at all, but fundamentally alter State policies, procedures, and laws that are traditionally left to State governance.  Not only would these

orders threaten state sovereignty, it would effectively destroy state sovereignty in certain areas, like the regulation and discipline of its attorneys and judges. Consequently, Plaintiff does not request prospective injunctive relief within the contemplation of the *Ex Parte Young* doctrine.

### 4. Maryland Has Not Waived Its Sovereign Immunity.

Because Plaintiff's claims are barred by the Eleventh Amendment, the State is not susceptible to suit in federal court without a valid waiver or abrogation of its sovereign immunity. *See Board of Trs. of Univ. of Ala.,* 531 U.S. 356, 363 (2001). Although the State has created a limited waiver of its sovereign immunity under the Maryland Tort Claims Act ("MTCA"), that waiver is expressly limited to suits brought in state court. *See* Md. Code Ann., State Gov't § 12-104(a)(1) ("[T]he immunity of the State and of its units is waived as to a tort action, *in a court of the State,* to the extent provided under paragraph (2) of this subsection." (Emphasis added)). Moreover, the MTCA expressly states that the State has not "waive[d] any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution." Md. Code Ann., State Gov't § 12-103(2); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99 n.9 (1984) ("[T]he Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."); *Weller v. Department of Soc. Servs.,* 901 F.2d 387, 397 (4th Cir. 1990) (MTCA "clearly limits the state's waiver of immunity to

28

actions brought in the Maryland state courts").  Because all of Plaintiff's claims against the individual State Defendants and the state agencies are barred by the Eleventh Amendment, they should be dismissed.

### 5.    Congress Has Not Abrogated Maryland's Sovereign Immunity.

None of the statutes under which Plaintiff brings her claims abrogate the State's sovereign immunity.  In order to determine whether Congress has abrogated the State's sovereign immunity, a court must ask "whether Congress has 'unequivocally expressed its intent to abrogate the immunity.'"  *Seminole*, 517 U.S. at 55 (quoting *Green*, 474 U.S. at 68).  This intent must be made "obvious from a 'clear legislative statement.'"  *Id* (quoting *Blatchford* 786).  *See also Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989) (stating that to abrogate a State's sovereign immunity, Congress must make its intention "unmistakably clear in the language of the statute").

Neither RICO nor 42 U.S.C. §§1981, 1983, 1985, or 1986 unmistakably express an intent to waive the State's sovereign immunity.  None of these statutes even mention sovereign immunity or the possibility of bringing a claim against the State.  Consequently, Congress did not abrogate the State's sovereign immunity and Plaintiff cannot bring claims under these statutes against the state, its agencies, or its officials.

### C.    Plaintiff's Claims Must Be Dismissed Because She Fails To State A Claim Upon Which Relief Can Be Granted.

Plaintiff fails to state a claim upon which relief can be granted under RICO or 42 U.S.C. §§1981, 1983, 1985, or 1986.  In order to survive a motion to dismiss, a complaint "must 'provide the grounds of the plaintiff's entitlement to relief' with 'more than labels

and conclusions.'"   *US Airline Pilots Ass'n v. Awappa, LLC*, 2010 WL 2979332, at *2 (4th Cir. July 30, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Ultimately, 'factual allegations must. . . raise a right to relief above the speculative level,' and the complaint must offer 'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity."   *Id.*   (quoting *Bell Atl. Corp.*, 550 U.S. at 555-56).   Plaintiff fails to offer any specific allegations of acts taken in violation of the statutes under which she brings a claim.   The speculative, broad, and conclusory allegations in her complaint do not reasonably lead to the determination that further investigation will produce any evidence of the violations she alleges.

Further, because Plaintiff's civil RICO and §§ 1981, 1983, 1985, and 1986 claims sound in fraud, those claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Field v. GMAC LLC*, 660 F.Supp.2d 679, 686 (E.D.Va.2008) (explaining that "[w]here RICO claims are based on predicate acts of fraud, the heightened pleading standard set forth in Rule 9(b) of the Federal Rule of Civil Procedure applies").   Plaintiff here has failed to state predicate acts of fraud with particularity, specifying "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir.1999).

### 1.      Plaintiff Lacks Standing To Bring A Claim Under RICO.

Plaintiff alleges that Defendants Prince George's County, Jack Johnson, Governor O'Malley, Chief Judge Bell, Judge Missouri, Judge Love, State's Attorney Ivey, Clerk

Magee, and Clerk Abrams are liable under RICO for engaging in a pattern of racketeering activity from June 2003 to March 2010.  Complaint at ¶ 109.  Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[4]   A person "injured in his business or property by reason of a violation of section 1962" may sue for treble damages.  18 U.S.C. §1964(c).

Plaintiff does not properly allege that she was injured in her business or property by a violation of §1962.  Therefore, she does not have standing under §1964(c) to bring a civil claim.  *See Sedima SPRL v. Imrex Co.*, 473 U.S. 479, 496 (stating a plaintiff bringing a RICO claim "has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation).  First, Plaintiff claims many damages by the alleged RICO acts which are not injuries to her

---

[4] Although Plaintiff does not specify that her RICO claim is brought under §1962(c), it clearly cannot be brought under the other subsections of §1962.  Section 1962(a) prohibits a person who has received income from racketeering activity to invest that income in the acquisition or establishment of an enterprise.  Plaintiff does not allege any investment of racketeering income.  Section 1962(b) prohibits a person, through racketeering activity or collection of an unlawful debt, to take control of an enterprise.  Plaintiff does not allege that Defendants have taken control of an enterprise.  Section 1962(d) makes it unlawful for any person to conspire to violate subsections (a), (b), or (c).  Plaintiff's complaint makes no allegations of such a conspiracy.

business or property.  For instance, Plaintiff alleges she was "injured in her property interests" in that she "lost the right to a competent attorney for a criminal defense," "lost the right and ability to bear children," "lost an integral piece of her self-esteem," and her lost her "right to respect lawyers," among other things.  Complaint ¶ 115.

Plaintiff also states that she "was injured in business and property by reason of the pattern of racketeering activity in that [her business] was unable to function normally from 2003 until 2010 and continuing."  Complaint at ¶ 114.  Plaintiff states her business "lost income and business opportunities, actual and potential; [her business] lost a once in a lifetime opportunity that had income potential of One Hundred Million Dollars."  *Id.* at P 113.  However, these alleged injuries to her business cannot satisfy the standing requirement of §1964(c) because Plaintiff's allegations are legally insufficient to show proximate cause between the RICO acts and her loss.  The Fourth Circuit Court of Appeals has stated "it is clear that a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege . . . an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged."  *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988).  An injury to a plaintiff's business or property requires a legal or proximate causation; this "determination is properly one of law for the court, taking into consideration such factors as the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection."  *Id.* at 1189.

32

Lost business opportunity or potential income is clearly too speculative to consider an injury to Plaintiff's business or property interest.  There is no way to determine that these opportunities ever would have materialized.  Therefore, it is legally impossible for Plaintiff to establish a proximate cause between the alleged RICO acts and her lost 100 million dollar opportunity.

Plaintiff's allegations are also legally insufficient to establish proximate cause between the alleged RICO acts and any actual loss to her business or property.  Plaintiff states that the State Defendants "engaged in bank, mail, and wire fraud and taking kickbacks and bribes."  Complaint at ¶ 110.  Plaintiff does not state who took a bribe, who paid the bribe, or what the bribe was for.  She does not allege who engaged in mail fraud or give even the most general statement regarding the nature or subject of the bank, mail, or wire fraud.  She does not attempt to even remotely connect these acts to her business.  No dates, even approximate dates, are given for these alleged acts.  Plaintiff does not describe the nature of her business or how these alleged acts affected the income of the business.  Clearly, these allegations do not "rise above the speculative level" and are legally insufficient to establish proximate cause between the alleged RICO acts and injury to her business.  Nor has Plaintiff stated any predicate acts of fraud with particularity, specifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby, as required by Fed. R. Civ. P. 9(b).  Consequently, Plaintiff lacks standing under §1964(c) and therefore may not bring a claim for violation of §1962(c).

2.       **Plaintiff Fails To State A Claim Under §1983.**

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)); *see also Wofford v. Evans,* 390 F.3d 318, 322 n.1 (4th Cir. 2004). "[O]ne cannot go into court and claim a 'violation of § 1983'– for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002) (quoting *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617 (1979)). Under § 1983 a person is liable when, under the color of law, he or she deprives another of a constitutionally protected right. 42 U.S.C. § 1983.

First, Plaintiff's § 1983 claims against the Circuit Court of Maryland for Prince George's County, the District Court of Maryland for Prince George's County, the Maryland Court of Special Appeals, the Maryland Attorney Grievance Commission, and the Maryland Commission on Judicial Disabilities must be dismissed because none is a proper defendant under § 1983. Neither the State nor its agencies is a "person" subject to suit under § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 (1989). In addition, the Defendant judges are not proper defendants in Plaintiff's claim as far as it seeks injunctive relief. Under § 1983 a person is liable for violating another's constitutional right "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiff

34

never received a declaratory decree nor alleges one was unavailable.  Therefore, to the extent the judges are sued under § 1983 for acts taken in their judicial capacity, the injunctive relief is unavailable.

Assuming that a proper defendant is named in a § 1983 claim, the "first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Therefore, although Plaintiff states each claim as a separate "violation" of § 1983, this analysis is incorrect.  She must prove a violation of a constitutional right before liability will be imposed under § 1983.  Plaintiff makes a claim under § 1983 for "inappropriate subpoena of and disclosure of Plaintiff's medical records" in a court proceeding.  However, there is no constitutionally protected right against a judge disclosing a litigant's medical records in a court proceeding.  In addition, Plaintiff claims the Maryland statute against the unauthorized practice of law and the Maryland criminal procedure law governing the expungement of criminal records are unconstitutional and violated her constitutional rights.  Complaint at ¶¶ 150, 197.  However, these statutes are not unconstitutional and did not violate her constitutional rights.  *See* Section II(C)(i), *supra*.

Plaintiff also claims Judge Nichols "violated" § 1983 by "failure to provide equal protection under the law of Title II ADA – 28 CFR Part 35."  Plaintiff states that she was denied a request for accommodation in the form of a trial consultant.  Complaint at ¶ 143, 146.  Again, this does not allege a violation of the constitution.  The Americans with Disabilities Act, 42 U.S.C. §12101, et seq., (the "ADA") is not a constitutional right, but

a federal statutory right.   The constitution does not guarantee a plaintiff partial representation by a trial consultant.  Even assuming violation of the ADA could form the basis of a complaint under § 1983, it is clear that Judge Nichols did not violate the ADA in this case.  The ADA was enacted to prevent discrimination against persons with mental and physical disabilities.

Although the ADA does guarantee a qualifying disabled person access to the court as well as other reasonable accommodations, the ADA does not require a person be granted appointed counsel or a trial consultant.  Plaintiff's contention otherwise is a complete misinterpretation of the ADA.  It is well established constitutional law that a court need only provide counsel to a party when that party is an indigent criminal defendant.  *Gideon v. Wainwright*, 372 U.S. 335 (1963) (holding that indigent defendants in a criminal prosecution have a constitutional right to have counsel appointed for them).

The ADA guarantees a court will make reasonable accommodations for a disabled person so that the court will not be inaccessible or unusable by the person with a disability.  28 C.F.R. §35.149.  Plaintiff does not claim that the court was inaccessible or unusable for her.  Plaintiff was able to physically access the court.  She also did not need any accommodation, such as a sign language interpreter or special equipment, to make the court usable for her.  Although upset with the outcome, Plaintiff was able to benefit from the same access to the court as every other litigant.  She points to no other litigant who was afforded partial representation by a trial consultant.

Plaintiff also alleges that the State Defendants are liable under § 1983 for obstructing justice.  Apparently Plaintiff alleges the State Defendants obstructed justice because there "was no probable cause for any of the criminal prosecutions against [her]" and because "[e]very civil action commenced against [Plaintiff] were [sic] either fraudulent on their face, not supported by any law, sought to punish [Plaintiff] for exercising her constitutional rights, and/or sought to hinder [Plaintiff] in seeking justice." Complaint at ¶¶ 232, 233.  In addition, Plaintiff alleges the State Defendants obstructed justice "by establishing laws and rules that allowed lawyers to deprive [Plaintiff] of constitutional rights."  Complaint, Count 10.  Even assuming that these allegations properly allege a violation of a constitutional right, the State Defendants are not liable for the conduct of others.  Defendants under these counts, judges, the Circuit Court for Prince George's County, the District Court for Prince George's County, the Court of Special Appeals of Maryland, the Attorney Grievance Commission, and the Maryland Commission on Judicial Disabilities did not bring any civil or criminal claims against Plaintiff.  These Defendants also cannot be held responsible as to any constitutional violations by attorneys not named as defendants.

Finally, Plaintiff claims the State Defendants are liable under § 1983 for "operation of a kangaroo court."  Complaint at Count 8.  The specific violations Plaintiff alleges in this count are not constitutional violations but violations of Maryland statutes and court rules and procedures.  For instance, she claims that the State Defendants violated Md. Code Ann. Civ. Proc. § 2-323, violated the rules regarding scheduling

orders and case management tracks, and failed to follow "mandatory authority, Maryland rules or judicial cannons." Complaint at ¶ 218. To the extent her claim under § 1983 is based on these alleged violations of state law and state court procedures, it must be dismissed.

Plaintiff also states that in the alleged operation of the kangaroo court, she was "deprived of her rights under the First, Fourth and Fourteenth Amendments to the United States Constitution." Complaint at ¶ 224. Plaintiff does not attempt to connect the alleged acts to violations of these constitutional rights. Plaintiff cannot merely conclude her rights under the First, Fourth, and Fourteenth Amendments have been violated. In order to withstand a motion to dismiss, the complaint "must 'provide the grounds of the plaintiff's entitlement to relief' with 'more than labels and conclusions.'" *US Airline Pilots Ass'n v. Awappa, LLC*, 2010 WL 2979332, at *2 (4th Cir. July 30, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To the extent that Plaintiff's claim under this section is for violation of the Equal Protection Clause of the Fourteenth Amendment, it also fails for failure to state a claim. Plaintiff states that "Maryland's system of justice is dual in that litigants with attorneys are always given preferential treatment over litigants without attorneys" and that "Maryland's system of justice is hierarchical amongst litigants without attorneys in that factors such as social class, race, gender, and mental disability determine a person's treatment in Maryland's justice system." Complaint at ¶ 215-16. First, on its face the Maryland Rules of Civil Procedure apply to pro se litigants and attorneys equally.

Defendants deny that these rules were applied more strictly or differently to Plaintiff. However, assuming that the rules were applied differently, Plaintiff's claim still fails. To the extent they are applied differently, as explained above, pro se litigants are not a protected class and treatment of pro se litigants must only pass rational basis review.[5] Plaintiff cannot prove that the judges lacked a rational basis for the decisions they made pursuant to the Maryland Rules of Civil Procedure.  Plaintiff's allegations amount to nothing more than obvious disagreement and anger with the outcome of her case. Therefore, an inquiry into the reasons the judges made these decisions is inappropriate and should not be allowed.  A judge cannot be compelled to reveal his or her mental process or deliberative thoughts under these circumstances.  "The mental process rule protects the secret mental processes of those who, acting in a judicial or quasi-judicial capacity, make decisions as to facts or as to law."  *Singer Sewing Machine v. N.L.R.B.*, 329 F.2d 200, 206 (4th Cir. 1964).  See also *U.S. v. Morgan*, 313 U.S. 409, 422 (1941) (stating that an examination of a judge's mental process "would be destructive of judicial responsibility" and a judge "cannot be subjected to such scrutiny").  Therefore, this claim should be dismissed.

_____

[5] Although Plaintiff mentions race, it is clear by reading the complaint as a whole that the unequal treatment of which she complains is between pro se litigants and attorneys.  Her requested relief deals significantly with this perceived mistreatment, such as a complete restructuring of the attorney grievance procedures, as well as an attempt to equalize treatment in areas such as access to conference rooms and other perceived "perks."

### 3. Plaintiff Fails To State A Claim Under 42 U.S.C. § 1981.

Plaintiff fails to state a claim under § 1981 upon which relief may be granted because she does not allege discrimination on the basis of her race. Section 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property *as is enjoyed by white citizens*, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (emphasis added). Plaintiff attempts to state four claims under § 1981: She claims the State Defendants violated § 1981 by "establish[ment] [of] a wiretapping law that protects white collar criminals while prohibiting protection of law abiding citizens," "deprivation of rights. . . by a provision of Maryland's unauthorized practice of law statute," "operation of a Kangaroo court," and "obstruction of justice by establishing laws and rules that allowed lawyers to deprive [Plaintiff] of constitutional rights." Plaintiff does not allege in any of these counts that she was unable to enjoy rights to the same extent as white citizens.[6] Nor has Plaintiff stated any predicate acts of

--------------------

[6] Plaintiff does not mention race at all in three of the four counts under § 1981. In Count Eight, "Operation of a Kangaroo Court," Plaintiff mentions race twice. However, as explained in footnote five, *supra*, Plaintiff's complaint read as a whole does not allege differential treatment between her and people of another race. Instead, the differential treatment is alleged between pro se litigants and attorneys or litigants with attorneys. The

fraud with particularity, specifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby, as required by Fed. R. Civ. P. 9(b).  Consequently, her claims brought under § 1981 should be dismissed.

> ### 4.    Plaintiff Fails To State A Claim Under § 1985 Because She Does Not Allege Sufficient Facts To Support A Finding Of An Agreement, An Overt Act Done In Furtherance Of The Conspiracy, Or Racial Animus.

Section 1985 of the Civil Rights Act prohibits five classes of conspiracy.  *Kush*, 460 U.S. at 724.  Section 1985 is divided into three subsections; §1985(1) prohibits one class of conspiracy, and §§1985(2) and (3) each prohibit two classes of conspiracy.  *Id.* Three of the five categories relate to institutions and processes of the federal government; §1985(1) deals with federal officers, the first part of §1985(2) deals with federal judicial proceedings, and the second part of §1985(3) deals with federal elections.  *Id.*  Because Plaintiffs make no allegations concerning federal officers, federal judicial proceedings, or federal elections, these subsections of §1985 are totally inapplicable to the instant case.[7]

Therefore, Plaintiffs' claims must be brought pursuant to the second part of §1985(2) or the first part of §1985(3).  The second part of §1985(2) prohibits

---

fact that Plaintiff mentions race twice in one of her claims under § 1981 is insufficient to alter the fact her complaint does *not* allege she was discriminated against on the basis of her race.

[7] All of the proceedings in which Plaintiff alleges form the basis of her claims took place in state court and all Defendants are state employees.

conspiracies to obstruct the course of justice in state courts.  The first part of §1985(3) provides a cause of action against persons who conspire to deprive a person or class of persons of the equal protection or equal privileges and immunities of the law.  Although they prohibit different classes of conspiracies, both subsections require proof of an agreement or meeting of the minds between the alleged conspirators, an overt act done in furtherance of the conspiracy, and racial or class-based animus.  Because Plaintiff has not stated any such facts or any predicate acts of fraud with particularity, specifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby, as required by Fed. R. Civ. P. 9(b), her claim must be dismissed.

> **a)      Plaintiffs' Claim Must be Dismissed for Failure to Allege Sufficient Facts to Show an Agreement or Meeting of the Minds Between Defendants.**

In order to allege a cause of action for conspiracy under §1985, the plaintiff must show an agreement or meeting of the minds between the defendants to commit the wrongful act and cause the resulting injury to the plaintiff.  *See Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) ("Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."); *Hinkle v. City of Clarksburg, West Virginia*, 81 F.3d 416, 421-22 (4th Cir. 1996) (stating that to prove conspiracy to block access to the courts, plaintiffs must prove a "mutual understanding" or agreement to commit the wrongful act); *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983)

42

(stating that the "principal element" of civil conspiracy under §1985 is "an agreement between the parties 'to inflict a wrong against or injury upon another'") (*quoting Rotermund v. United States Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973)).

Because Plaintiffs must prove an agreement or meeting of the minds between Defendants, they have "a weighty burden to establish a civil rights conspiracy." *Hinkle*, 81 F.3d at 421. Consequently, the Fourth Circuit Court of Appeals stated it "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." *Simmons*, 47 F.3d at 1377. *See also Hoffman v. Baltimore Police Dept.*, 379 F.Supp.2d 778, 798 ("The Fourth Circuit has taken a restrictive view of [a §1985] cause of action.").

In the instant case, Plaintiff falls far short of meeting this weighty burden. She alleges no concrete facts that can permit a reasonable inference of an agreement or meeting of the minds between Defendants. Plaintiff only makes conclusory statements and bald allegations of conspiracy. *See* Complaint at ¶ 252, 271 ("Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves."). The Fourth Circuit Court of Appeals has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377. *See also Gooden v. Howard County*, 954 F.2d 960, 969 (4th Cir. 1992) (stating that courts have required "plaintiffs alleging unlawful intent in conspiracy claims under §1985(3) or §1983 plead specific facts in a non-conclusory fashion to survive a motion to

dismiss"); *Ballinger v. North Carolina Agr. Extension Service*, 815 F.2d 1001, 1007 (4th Cir. 1987) (dismissing a §1985 claim because "[q]uite simply, there is no proof, direct or indirect, of participation in any conspiracy by these appellees.  Instead, appellant relies solely on the bare allegations of her complaint").

In *Hinkle*, the Fourth Circuit Court of Appeals held the appellants did not allege sufficient facts to prove an agreement by the alleged conspirators.  81 F.3d at 422. Appellants argued that the fact a police offer threw away probative evidence was proof of a conspiracy.  *Id.*  The Court noted the appellants "offer no evidence, other than the act itself, that [the police officer] intended to further a conspiratorial objective."  *Hinkle*, 81 F.3d at 422.  The appellants did not "disclose any communication" by the alleged conspirators that would give rise to an inference of an agreement.  *Id.*  The court noted that the "evidence must, at least, reasonably lead to the inference that [the alleged conspirators] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  *Id.* at 421.

Likewise, Plaintiff offers no evidence of a conspiracy.  Plaintiff points to no communication between Defendants or any communication between herself and Defendants that allude to a conspiracy.  Defendants include multiple state agencies, courts, and judges.  There is absolutely no evidence tying these varied Defendants together.

It appears that several Defendants, namely the Attorney Grievance Commission, the Commission on Judicial Disabilities, and perhaps the Maryland Court of Special

44

Appeals are named because Plaintiff believes they failed to correct certain alleged violations of law. However, the Fourth Circuit Court of Appeals has specifically rejected the idea that willful blindness can support a §1985 conspiracy claim because willful blindness is not evidence of an agreement to participate in the conspiracy. The Court stated that the law is clear it "must be shown that there was a 'single plan, the essential nature and general scope of which was known to each person'. . . alleged 'willful blindness'. . . simply does not meet such a standard." *Simmons*, 47 F.3d at 1378.

Plaintiff's complaint amounts to no more than wild speculation and bald allegations. The Fourth Circuit Court of Appeals has spoken very strongly against allowing this type of speculation to support a §1985 conspiracy claim. It stated, "While we recognize that direct evidence of a conspiracy is not always available, we cannot use this fact as an excuse to forgive Appellants' failure to prove their case. There is a reason why we do not allow this level of conjecture to determine lawsuits: such adventures of the mind tend to be unreliable." *Hinkle*, 81 F.3d at 423. Consequently, the complaint should be dismissed.

> **b)** **Plaintiff's Claim Must Be Dismissed For Failure To Allege An Overt Act In Furtherance Of the Alleged Conspiracy.**

Plaintiff fails to allege an overt act taken by Defendants in furtherance of the alleged conspiracy, and therefore their complaint must be dismissed. There "cannot be a civil cause of action for conspiracy under §1985 without an overt act." *Lenard*, 699 F.2d at 883. *See also Simmons*, 47 F.3d at 1376 (stating that injury as "a consequence of an

45

overt act committed by the defendants in connection with the conspiracy" is an essential element of a cause of action for conspiracy under §1985); *Griffin*, 403 U.S. at 103 (stating that a complaint must allege defendants "did, or caused to be done, any act in furtherance of the object of the conspiracy" in order to state a cause of action under §1985).

Although Plaintiff brings a claim under §1985 against all Defendants, she never mentions any of the Defendants specifically by name in her complaint for these claims. Plaintiff attributes no specific act to any of the Defendants; Plaintiff only alleges a broad range of acts and does not allege which Defendant took the act.   While it is difficult to understand why Plaintiff believes any of the Defendants conspired against her, it is especially difficult to comprehend the inclusion of Attorney General Gansler and Governor O'Malley in this complaint.  It is certainly an "adventure of the mind" to claim that high-ranking government officials, who never came into contact with Plaintiff or handled any aspect of any of Plaintiff's claims, somehow conspired against her.  Plaintiff also has failed to state any predicate acts of such fraud and conspiracy with particularity, specifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby, as required by Fed. R. Civ. P. 9(b).

     c)     **Plaintiffs' Claim Must Be Dismissed for Failure to Allege Sufficient Facts to Support a Finding of Racial or Class-Based Animus.**

To maintain a cause of action under either §§1985(2) or (3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Kush*, 460 U.S. at 726 (*quoting Griffin*, 403 U.S. at 102). In addition, "the 'invidiously discriminatory animus' requirement. . . requires that the defendant have taken his action at least in part 'because of', not merely 'in spite of,' its adverse affects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276 (1993). However, Plaintiff does not allege a single fact from which a person can reasonably infer Defendants were motivated because of racial or class-based animus. Plaintiff's claims under §1985 do not mention race once.

Plaintiff points to no discriminatory statements or acts by Defendants that could reasonable lead to an inference of racial animus. Because Plaintiffs do not allege sufficient facts to establish the required element of racial animus, their §1985 claim must be dismissed.

**5.**     **Plaintiff Fails To State A Claim Under § 1986 Because She Does Not Allege Any Defendant Failed To Prevent A Wrong Under § 1985.**

Plaintiff fails to state a claim under § 1986 because the basis of her claim is Defendants' alleged failure to ensure members of the Maryland bar are competent and ethical – not that Defendants' knew of, and failed to prevent, a wrong under § 1985. Section 1986 states:

47

> Every person who, having knowledge that any of the wrongs conspired to
> be done, *and mentioned in section 1985 of this title*, are about to be
> committed, and having power to prevent or aid in preventing the
> commission of the same, neglects or refuses so to do, if such wrongful act
> be committed, shall be liable to the party injured. . .

42 U.S.C. § 1986 (emphasis added).

Plaintiff fundamentally misunderstands § 1986; she does not allege Defendants had knowledge of the wrongs conspired to be done in § 1985, had power to prevent the wrongs, and failed to do so. Instead, the basis of Plaintiff's § 1986 claim is that the Defendants "have a duty to protect [Plaintiff], a member of the public[,] by ensuring that lawyers and judges are technically and morally competent and worth of public trust." Complaint ¶ 286. Plaintiff alleges that although attorneys and judges were in violation of Maryland's rules of professional conduct, the Attorney Grievance Commission "refused to discipline attorneys" and the Commission on Judicial Disabilities "refused to discipline the judges." *Id.* at ¶¶ 293-94. Plaintiff even states that "Defendants have a duty to warn [Plaintiff] and the remainder of the public that lawyers and judges do not hail from a race of angels, and when you hire one or go before one, you do so at your own risk." *Id.* at ¶ 302.

Not once in stating her claim under § 1986 does Plaintiff mention alleged wrongs conspired to be done in violation of § 1985. She does not allege that Defendants knew of these wrongs or were in a position to prevent the wrongs which resulted from alleged conspiracy. Clearly, therefore, her complaint fails to state a claim under § 1986 upon which relief can be granted and her complaint must be dismissed.

## IV.    CONCLUSION

Plaintiff's complaint should be dismissed, with prejudice, and judgment should be entered in favor of the State Defendants as to all claims.

Respectfully submitted,

H. Scott Curtis
Assistant Attorney General
Federal Bar No. 08313
200 St. Paul Place
20th Floor
Baltimore, Maryland 21202
(410) 576-6576
(410) 576-6393 (fax)
hcurtis@oag.state.md.us

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this September 27, 2010, a copy of the foregoing was served by electronic means via the Court's Case Management / Electronic Case Files (CM/ECF) system on the persons entitled to receive such notice, and by email to Deirdre Glascoe.

H. Scott Curtis
Assistant Attorney General